UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PERMOBIL, INC., et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 3:09-01145 JUDGE HAYNES |
| GMRI, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM**

Plaintiffs, Permobil, Inc. d/b/a Permobil of America, Inc., a Tennessee corporation, and Goran Udden, a Switzerland citizen and Permobil's former president filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: GMRI, Inc., a Florida corporation, RARE Hospitality International, Inc., ("RHI"), a Florida corporation, and OSI Restaurant Partners, LLC, ("OSI"), a Florida limited liability company. Plaintiffs assert claims for negligence, negligent or fraudulent misrepresentation or omission, conversion, and violation of the Tennessee Identity Theft Deterrence Act of 1999, ("ITDA"), Tenn. Code Ann. § 47-18-2101 et seq.

In earlier proceedings, the Court denied the Defendants' motion for judgment on the pleadings (Docket Entry Nos. 46 and 47), concluding that Defendants owed Plaintiffs a legal duty to protect against unauthorized and fraudulent uses of Plaintiffs' credit card and Plaintiffs alleged sufficient facts that the Defendants breached that duty.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 40), contending, in sum: (1) that Defendants did not owe a legal duty to Plaintiffs; (2) that the doctrine

of intervening cause relieves Defendants of liability; (3) that Plaintiffs' claims for negligent or fraudulent misrepresentation fails for lack of proof of justifiable reliance; (4) that the evidence does not support a claim for conversion; and (5) that Plaintiffs' claims under the ITDA are time barred by the applicable state statute of limitations.

Plaintiffs respond, in essence, that Defendants owed Plaintiffs a legal duty to verify that the cardholder had the authority to use Plaintiffs' credit card; that the doctrine of superseding/intervening cause is inapplicable here; that Plaintiffs' proof establishes justifiable reliance on their negligent or fraudulent misrepresentation claims; that Defendants converted Plaintiffs' monies once Defendants were on notice of the unauthorized charges; and that under the Tennessee discovery rule, the limitation period was tolled by Defendants' concealment of the fraudulent activity giving rise to Plaintiffs' claims.

For the reasons set forth below, the Court concludes that given the legal duty Defendants owed to Plaintiffs, material factual disputes exist as to all of Plaintiffs' claims and therefore Defendants' motion for summary judgment should be denied.

## I. REVIEW OF RECORD[1]

Permobil manufactures, distributes and sells electric wheelchairs throughout the United States. (Docket Entry No. 45, Plaintiffs' Response to Defendants' Statements of Undisputed Fact,

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed.R.Civ.P. 56(d).

2

at ¶ 1). Goran Udden is Permobil's former president. Id. at ¶ 2. Defendant GMRI operates, among others, Olive Garden and Red Lobster restaurants; Defendant RHI operates Longhorn restaurants; and OSI operates, among others, Outback and Carrabba's restaurants. Id. at ¶¶ 3-5.

In or about 1993, Plaintiffs contracted with American Express ("AMEX") to obtain a credit card for Permobil's business. Id. at ¶ 9. Plaintiffs authorized a certain number of its employees to use the AMEX credit card for Permobil's business and issued separate Permobil AMEX cards to each authorized employee, including Charles S. Combs, a sales representative. Id. at ¶¶ 10-12. Each credit card had Permobil's name and the employee's name embossed on the card. Id. at ¶ 11.

In 2004, Permobil terminated Combs. Id. at ¶ 13. Jennifer Haney, Permobil's accounts payable supervisor, was instructed by Larry Jackson, Permobil's then President, to cancel and destroy Combs's Amex card. Id. at ¶¶ 6, 14. Yet, Jennifer Haney kept Combs's Amex card and provided the card to Johnny Haney, her husband,. Id. at ¶ 15. From July 2004 until November 2007, Johnny Haney made unauthorized charges at Defendants' restaurants in the Nashville, Tennessee, area. Id. at ¶¶ 16-17.

According to Jennifer Haney, she and her husband used their real names when dining at Defendants' restaurants, never used the name "Charles Combs," and Defendants' employees knew them as the Haneys and knew her husband's first name was Johnny. (Docket Entry No. 51, Defendants' Response to Plaintiffs' Statement of Additional Facts at ¶ 1). However, four of Defendants' employees stated that they knew the Haneys as either "Johnny," "Johnny Combs," "Mr. and Mrs. Combs," or "the Combs." Id. Defendants did not notify Plaintiffs that the Defendants used Combs's Permobil's American Express card at Defendants' restaurants. Id. at ¶ 2.

In these restaurant transactions, Johnny Haney charged over $185,000 to Permobil's credit card during hundreds of visits to Defendants' restaurants and often left tips that exceeded 75% or 100% of the bill. Id. at ¶ 3. Defendants did not check Johnny Haney's identification when he used the Permobil Amex card and never verified whether Haney was authorized to use that credit card. Id. at ¶ 4. One manager at Outback Steakhouse in Hermitage, Tennessee, on at least on one occasion, called Johnny Haney's cell phone number and encouraged him to return to the restaurant to increase the restaurant's revenues. Id. at ¶ 5.

In certain situations, Defendants' agents and employees check a customer's identification for a credit card transaction, when the credit card lacks a signature or the credit card contains the phrase, "please see id". Id. at ¶ 6. Steven Norman, a Red Lobster general manager, testified that a server is not required to check the name and signature on the credit card or check the identification of the cardholder. (Docket Entry No. 45, Exhibit 4 at pp. 7, 16). Yet, according to the restaurant's rules and regulations, servers must check the signature on the charge slip against the signature on the credit card. Id. at pp. 23-24. Todd Cassety, the manager at the Hermitage Outback restaurant, was unsure of the company's policy, but his policy and experience at other Outbacks was to instruct servers to check a customer's identification when paying with a credit card. Id., Exhibit 2 at pp.13, 48, 55.

Each Defendant has a merchant agreement with American Express that requires, among other things, that the merchant verify that the cardholder's name and signature match the name and signature on the credit card. (Docket Entry No. 51, at ¶ 9). Under the American Express merchant agreements, American Express then provides the authorization code when the credit card is swiped through the computer terminal. Id. at ¶ 10.

Jennifer Haney was responsible for reviewing and paying Permobil's American Express invoices. (Docket Entry No. 45, at ¶¶ 7-8). Permobil's department managers also reviewed American Express card charges to ensure compliance with their department budget. Id. at ¶ 7, Exhibit 1, Larry Jackson Deposition at 68-70. Larry Jackson, Permobil's president, also reviewed American Express charges. Id. Jennifer Haney paid all of the American Express charges related to the use of Combs's card from Permobil's Bank of America account. Id. at ¶ 18. To conceal the charges and payments, Jennifer Haney dispersed the expended funds or payments across several different cost centers. Id. at ¶ 19. Jennifer Haney also initiated multiple wire transfers to other merchants to pay for personal expenses from Permobil's Bank of America account. Id. at ¶ 20. Neither Permobil's management nor its outside accountants discovered Jennifer Haney's fraudulent activity until December 2007. (Docket Entry No. 42, Defendants' Statements of Undisputed Fact, at ¶ 21). On December 4, 2007, Permobil terminated Jennifer Haney. Id. at ¶ 22.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied

6

requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine

7

'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

9

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under

the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## A. Negligence Claim

For a negligence claim, a plaintiff must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). Whether a legal duty exists in a given factual context is a question of law for the court. Giggers v. Memphis House. Auth., 277 S.W.3d 359, 365 (Tenn. 2009). "In general, an individual has a duty to others to refrain from engaging in misfeasance, affirmative acts that a reasonable person 'should recognize as involving an unreasonable risk of causing an invasion of an interest of another' or acts 'which involve[ ] an unreasonable risk of harm to another.'" Giggers, 277 S.W.3d at 364 (quoting Restatement (Second) of Torts §§ 284, 302 (1965)). In determining whether a legal duty exists, courts should consider

> whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others-or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.

Id. at 869-70 (quoting Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 859 (Tenn. 1985)).

In Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 820 (Tenn. 2008), the Tennessee Supreme Court held that the foreseeability of the harm is a key factor on whether a defendant owes a legal duty and that "[a] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." (citations and internal quotation marks omitted). If there is a finding of a

foreseeable risk of harm, "courts must engage in 'an analysis of the relevant public policy considerations,' to determine whether a duty enforceable in tort must be imposed." Giggers, 277 S.W.3d at 366 (citations omitted). The following non-exclusive factors have been considered:

> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

Id. (citations omitted).

Although Tennessee courts are reluctant to impose liability for nonfeasance, "[a]s a means of mitigating the harshness of the common law rule, exceptions have been created for circumstances in which the defendant has a special relationship with either the individual who is the source of the danger or the person who is at risk." Id. at 364. "[E]ven though the specific negligent act may constitute an omission, the entirety of the conduct may still be misfeasance that created a risk of harm." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 357 (Tenn. 2008).

This Court previously concluded that based upon the complaint's" factual allegations . . . that Johnny Haney left very large tips at the Defendants' restaurants, regularly exceeding 50% of the bill and often exceeding 100% of the bill, in exchange for cash[,] [s]uch transactions at a restaurant could reasonably be deemed to be highly unusual," creating a legal duty owed by the merchant to Permobil. (Docket Entry No. 46, Memorandum at 7). The evidence on Defendants' motion for summary judgment does not alter that conclusion. Considering the evidence in a light most favorable to the Plaintiffs, as required by this motion, Plaintiffs' evidence shows that the Haneys used their real names when dining at Defendants' restaurants and never used the name "Charles

12

Combs". Defendants' employees knew them as the Haneys and knew Jennifer Haney's husband's first name was Johnny. Johnny Haney left large tips that often exceeded 75% or 100% of the bill. A manager once called Johnny Haney's cell phone number and requested him to come to the restaurant for the purpose of increasing the restaurant's revenues. There is also evidence that at least one of the Defendants' rules and regulations require servers to check the signature on the charge slip against the signature on the credit card. One restaurant manager testified that his policy, as well as his experience at other Outbacks, was to instruct servers to check a customer's identification and signature when paying with a credit card. Plaintiffs' evidence shows that these policies were not followed here.

To be sure, Defendants dispute that they knew the Haneys by their real names and that they had a policy requiring servers to verify the name and signature on the credit card or check the identification of the cardholder. However, the Court must construe the facts in the light most favorable to Plaintiffs, as the nonmoving parties, in a motion for summary judgment. Credibility issues cannot be resolved on a motion for summary judgment. Accordingly, the Court concludes that in this factual context, Plaintiffs have established that Defendants owed Plaintiffs a legal duty.

Defendants contend that even if they owed Plaintiffs a legal duty, Jennifer Haney's conduct of hiding the charges was an intervening cause, relieving Defendants of liability. "The intervening cause doctrine operates to relieve a negligent actor from liability 'when a new, independent and unforeseen cause intervenes to produce a result that the negligent actor could not have reasonably foreseen.'" Potter v. Ford Motor Co., 213 S.W.3d 264, 273 (Tenn. Ct. App. 2006) (quoting Rains v. Bend of the River, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003)). "The doctrine applies only when the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable

to the negligent actor, and (3) was not a normal response to the negligent actor's conduct." Rains, 124 S.W.3d at 593. If these elements are proven, "the intervening act is said to be a superseding cause, which 'breaks the chain of proximate causation.'" Potter, 213 S.W.3d at 273 (citations omitted). A superseding cause is defined as "'an act of a *third person or other force* which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" Id. at 274 (emphasis in original) (citations omitted). Thus, "[t]he conduct of the third party or other force supplants the defendant's conduct as the legal cause of the plaintiff's injuries. . . . [and] relieves the defendant of liability to the plaintiff." Id. at 273.

Here, Jennifer Haney's acts of hiding the fraudulent charges was part of the original scheme to harm Plaintiffs. Yet, Jennifer Haney's conduct alone was insufficient to cause Plaintiffs' injuries, as the harm could not have initially taken place without Defendants accepting Plaintiffs' credit card for payment. Moreover, "the question of superseding intervening cause is a matter peculiarly for the jury because of foreseeability considerations." Potter, 213 S.W.3d at 274 (quoting McClenahan v. Cooley, 806 S.W.2d 767, 775-76 (Tenn. 1991)). Accordingly, for these reasons, Defendants' contention on superceding cause is not ground for summary judgment.

### B. Negligent or Fraudulent Misrepresentation Claim

Defendants next contend that Plaintiffs' evidence does not establish that Defendants communicated a material statement to Plaintiffs or that Plaintiffs justifiably relied on Defendants' misrepresentations. For this claim, a plaintiff must show "that he justifiably relied upon a material misrepresentation made by an individual under a duty to properly inform as to the material facts." Id. Thus, to establish a claim for negligent misrepresentation, a plaintiff must prove that:

> 1. the defendant is acting in the course of his business, profession, or employment or is in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; *and*
> 2. the defendant supplies faulty information meant to guide others in their business transaction; *and*
> 3. the defendant fails to exercise reasonable care in obtaining or communicating the information; *and*
> 4. the plaintiff justifiably relies upon the information.

John Martin Co., Inc. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431 (Tenn. 1991) (citing Restatement (2d) of Torts § 552 (1977)) (emphasis in original).

"As a general matter, a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations." Fayne v. Vincent, 301 S.W.3d 162, 177 (Tenn. 2009) (citing Macon County Livestock Mkt., Inc. v. Ky. State Bank, 724 S.W.2d 343, 349 (Tenn. Ct. App.1986)); Hodge v. Craig, No. M2009-00930-COA-R3-CV, 2010 WL 4024990, at *7 (Tenn. Ct. App. Oct. 13, 2010) ("Mother's indication to Husband that the child was his, *coupled* with her failure to inform him of her recent encounter with Hay, constitutes 'active concealment' that is the legal equivalent of a positive misrepresentation.") (emphasis added) (citing 37 Am.Jur.2d Fraud and Deceit § 233, "Silence accompanied by deceptive conduct can give rise to an actionable fraudulent concealment.").

> It is well-settled that fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or nondisclosure of a known fact when there is a duty to disclose. Hill v. John Banks Buick, Inc., 875 S.W.2d 667 (Tenn. App. 1993); Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat'l Ass'n, 835 S.W.2d 25 (Tenn. App. 1992); Stacks v. Saunders, 812 S.W.2d 587 (Tenn. App. 1990). Nondisclosure of a material fact may also give rise to a claim for fraudulent or negligent misrepresentation when the defendant has a duty to disclose and the matters not disclosed are material. Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. App. 1992).

Courts of this state have ruled that liability for non-disclosure can arise only in cases where the person sought to be held responsible had a duty to disclose the facts at issue. In Domestic Sewing Machine Co. v. Jackson, 83 Tenn. 418 (1885) our Supreme Court stated:

> In all cases, concealment or failure to disclose, becomes fraudulent only when it is the duty of a party having knowledge of the facts to discover them to the other party: 2 Pom. Eq., sec. 902. And this author, in the same section says: "All the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:
>
> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
>
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class."

Justice v. Anderson County, 955 S.W.2d 613, 616-17 (Tenn. Ct. App.1997); accord Macon County Livestock, 724 S.W.2d at 349; see also Homestead Group, LLC v. Bank of Tennessee, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) ("Moreover, the courts have extended the duty of disclosure of material facts to real estate transactions under certain circumstances.").

Plaintiffs' evidence does reveal that Defendants made material misrepresentations to Plaintiffs. The trier of fact could find that the Defendants knew the actual identities of the Haneys and that the credit card was authorized only for Charles Combs. Thus, the Defendants' acceptance of the Haneys' use of the card resulted in a misrepresentation to American Express that Combs was the actual card user on the occasions at issue. The Defendants also committed several affirmative acts that the trier of fact could find to be a misrepresentation to Plaintiffs. If the Defendants knew the Haneys actual identity and represented that the credit card was used by Combs, then Defendants'

misrepresentation could be found to be the cause of Plaintiffs' injury. Both Plaintiffs and American Express depend upon the merchants who are integral parties to these credit card transactions. The Defendants, as merchants at the point of sale, could reasonably be expected to determine that the actual user of the card is the authorized person. The Defendants' representatives acknowledge such measures in the verification of the signature on the card and the restaurant's bill. These facts also establish Plaintiffs' justifiable reliance on merchants' representations about the on site purchase. Moreover, some of the Defendants' managers actively solicited the Haneys who gave highly unusual amounts of tips for cash. In the Court's view, these facts could support a judgment on Plaintiff's negligent or fraudulent misrepresentation claims.

### C. Conversion

Defendants contend that they lacked any knowledge that the expenses charged to Permobil's American Express card were unauthorized, and thus, Plaintiffs' proof cannot establish a conversionclaim. Conversion is the appropriation of tangible property to a party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right. H&M Enterprises, Inc. v. Murray, No. M1999-02073-COA-R3-CV, 2002 WL 598556, at *3 (Tenn. Ct. App. April 17, 2002) (citing Barger v. Webb, 216 Tenn. 275, 391 S.W.2d 664, 665 (1965)). "Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Id.

> The main focus of the tort is the interference with an owner's property right. The degree of this interference, as well as the impact on the property, determines whether there has been a conversion.
>
> . . . .

17

> To constitute conversion, the defendant must intend to convert the property. This intention does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him.

Gen. Elec. Credit Corp. v. Kelly & Dearing Aviation, 765 S.W.2d 750, 753 (Tenn. Ct. App.1988). "Whether the defendant acts in good faith is generally immaterial." Permobil, Inc. v. American Exp. Travel Related Services Co., Inc., 571 F. Supp. 2d 825, 841 (M.D. Tenn. 2008) (citing Mammoth Cave Prod. Credit Assoc. v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App.1977)).

"The tort of conversion may lie 'where a defendant may have rightfully obtained possession of the property of the owner but refuses to return it to the owner when legally required to do so.'" Id. (citing Greer v. Corrections Corp. of Am., No. 01-A-01-9604-CH-00150, 1996 WL 697942, at *1-2, (Tenn. Ct. App. Dec. 6, 1996) (citing Crocket v. Beaty, 27 Tenn. 20 (1847)). "The rightful demand by the plaintiff, and a refusal by the defendant, are prima facie evidence of a conversion, and the onus is shifted to the defendant to show the facts constituting his justification or excuse for failure to deliver." Chase Manhattan Bank v. CVE, Inc., 206 F.Supp.2d 900, 910 (M.D. Tenn.2002) (citing Garvin v. Luttrell, 29 Tenn. 16 (1848)).

Here factual disputes exist as to whether the Haneys used their real names instead of the Combs' name. Johnny Haney often left tips that exceeded 75% or 100% of the bill in exchange for cash. On at least on one occasion, a manger called Johnny Haney to encourage him to come into the restaurant to increase the restaurant's revenues. Further, Defendants' agreement with American Express provides that the merchant must verify that the cardholder's name and signature match the name and signature on the credit card. American Express does not provide the authorization code until this verification is provided and then the credit card is swiped because the merchant represents

that the user of the credit is authorized to use the credit card. Given that all facts and inferences must be read in a light most favorable to Plaintiffs, the Court concludes that this claim cannot be resolved on a motion for summary judgment.

### D. ITDA Claim

Defendants assert that Plaintiffs' ITDA claim is barred by the applicable statute of limitations. Defendants rely on the papers filed in conjunction with their motion for partial judgment on the pleadings. See Docket Entry Nos. 29, 30, 34 and 37. The Court previously concluded that the facts in the record could give rise to a finding that Defendants concealed transactions that could toll the applicable statute of limitations. (Docket Entry No. 46, Memorandum at 7). The facts now before the Court do not change that conclusion. Accordingly, Defendants' cannot be decided on a motion for summary judgment.

For these reasons, the court concludes that Defendants' motion for summary judgment (Docket Entry No. 40) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of February, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge